J-A11011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| STEPHEN T. ARCHER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JULIE P. KAUER | : | |
| | : | |
| Appellant | : | No. 24 WDA 2023 |

Appeal from the Order Entered December 2, 2022
In the Court of Common Pleas of Clearfield County
Civil Division at No:  No. 2021-1549-CD

BEFORE:   BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:                **FILED: JULY 17, 2023**

Julie P. Kauer ("Mother") appeals from the December 2, 2022 order that awarded Stephen T. Archer ("Father") (collectively, "Parents") primary physical custody of Parents' son, W.A. ("Child"), born in July 2012.  After careful review, we vacate and remand.

We glean the factual and procedural history of this matter from the certified record.  Parents resided together in Father's residence in Ramey, Pennsylvania, during the first year of Child's life.  *See* N.T., 8/17/2022, at 19-20, 106.  However, in November 2013, Mother entered a rehabilitation facility due to her addiction to opiates.[1]  *Id.* at 31-32, 101.  Child continued to live

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Parents were married in September 2013.  N.T., 8/17/2022, at 101.  It is unclear from the record when Parents divorced.

with Father while Mother participated in rehabilitation services for approximately three months. *Id.* at 101. Thereafter, Mother moved to Pittsburgh to continue her treatment. Prior to the custody action commencing, Child continued to live with Father during the school year and visited Mother on weekends, during the summer, and Parents split holidays. *Id.* at 7, 100-101.

Mother currently resides in Bethel Park, Pennsylvania, with her husband, Adam Kauer. *Id.* at 5-6. Mother and Mr. Kauer have been in a relationship since 2014 and married in 2019. They are self-employed owners of a cleaning services company. *Id.* at 6.

At the time of these proceedings, Father still lived in Ramey, Pennsylvania with Child, his paramour, Becky Lavarchik, and occasionally Ms. Lavarchik's son, Z.M. *Id.* at 95-96. However, Father and Ms. Lavarchik testified that they recently purchased a new house in Houtzdale, Pennsylvania, and were in the process of moving. *Id.* 95-96, 159. Father has been employed as a corrections officer for 17 years with the Pennsylvania Department of Corrections and currently works at State Correction Institution ("SCI") Houtzdale. *Id.* at 97. Ms. Lavarchik also works at SCI Houtzdale as a registered nurse. *Id.* at 119. Due to Father's work schedule, he has utilized paternal grandparents, maternal grandparents, and, more recently, his paramour, for childcare. *Id.* at 16-17, 107-108. Father testified that he is currently working a temporary shift, overseeing construction at the prison,

from 7:00 a.m. to 5:00 p.m., but he will return to working 6:00 a.m. to 2:00 p.m. once the construction concludes. *Id.* at 98-99.

Parents' extra-judicial custody arrangement was largely successful for eight years. *Id.* at 7-9. Accordingly, Child has always attended school in the Moshannon Valley School District. *Id.* at 99. However, on November 4, 2021, after a parent teacher conference, Mother approached Father to discuss Child moving to Bethel Park and attending school there. *Id.* at 9-10. Mother testified that Father did not like the idea, but he agreed to have a conversation about it during the next custody exchange. *Id.* at 10. Mother believed that Father verbally agreed to allow Child to live with her. *Id.* at 34. Father testified that he never agreed to Mother's plan. Father initiated the custody action on November 22, 2021, seeking primary physical custody and shared legal custody. *Id.* at 102.

Thereafter, Parents attended a custody conference on January 11, 2022, and participated in a custody mediation on February 22, 2022. On March 23, 2022, Mother filed an answer and counter-complaint, in which she also requested primary physical custody of Child and requested a custody hearing.

The custody hearing occurred on August 17, 2022. Therein, Mother testified and presented the testimony of Mr. Kauer and maternal grandmother, Janet Caldwell. Father similarly testified and also adduced the testimony of his father, Stephen Archer, Senior ("Paternal Grandfather"), and Ms.

Lavarchik. The court conducted an *in camera* interview of Child, then ten years old, in the presence of counsel.

By order and opinion entered December 2, 2022, the trial court awarded Father primary physical custody, and Mother partial physical custody every weekend but one per month from Friday at 3:00 p.m. until Sunday at 5:00 p.m.; during the summer, on a two-week alternating basis; and during holidays, when Parents split their time with Child. The trial court also awarded Parents shared legal custody of Child.

On December 30, 2022, Mother timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On January 9, 2023, the trial court submitted a letter pursuant to Rule 1925(a) stating that it would be relying upon the reasoning provided in its opinion accompanying the December 2, 2022 order, and requested its decision to remain undisturbed.

Mother presents the following issues for review:

1. Whether the trial court erred and abused its discretion by failing to complete an independent consideration and assessment of all relevant factors set forth in 23 Pa.C.S.A. § 5328[?]

2. Whether the trial court erred and abused its discretion in failing to award Mother primary physical custody in light of the factors set forth in 23 Pa.C.S.A. § 5328[?]

3. Whether the trial court erred and abused its discretion in failing to consider [Child's] preference[?]

Mother's Brief at 4 (unnecessary capitalization omitted).

Our standard and scope of review in this context is well-established:

Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa. Super. 2023) (internal citations and quotations omitted).

As with all custody-related matters, this Court's "paramount concern is the best interest of the child involved." *Id*. at 61 (internal citation and quotation omitted). Indeed, Pennsylvania law provides that the trial court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S.A. § 5338(a). To that end, the Child Custody Act sets forth sixteen factors at 23 Pa.C.S.A. § 5328(a) that a court must consider prior to modifying an existing custody order. *See E.B. v. D.B.*, 209 A.3d 451, 460 (Pa. Super. 2019). While a court's consideration of these factors is mandatory, "it is within the trial court's purview as the

finder of fact to determine which factors are most salient and critical in each particular case." *Id*. (internal citation omitted). Furthermore, trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

These factors provide as follows:

**(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a). In order to evidence its consideration of these required elements, trial courts must set forth a discussion of these best-interest factors "prior to the deadline by which a litigant must file a notice of appeal." *A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014).

We begin our review with Mother's third issue, which is dispositive. Mother asserts that the trial court failed to properly consider Section

5328(a)(7), the well-reasoned preference of the child based on the child's maturity and judgment. Mother's Brief at 44. Specifically, Mother contends that the court erred in finding that "Child did not expressly state his desire." Mother's Brief at 44; *see also* Trial Court Opinion, 12/2/2022, at 2-3 (unpaginated). Rather, Mother argues that, during his *in camera* interview, Child testified that he preferred to reside with her and attend the Bethel Park School District. Mother's Brief at 32, 44. We agree.

In pertinent part, Child testified as follows on inquiry by the court.

Q: So, [Child], as I understand it, pretty much for all your life, you've been living with [Father] during the school year --

A: Uh-huh.

Q: -- and going to [Mother's] on the weekends. And then in the summers, you went to [Mother's] during the week and [Father's] on the weekend?

A: Yes.

Q: Okay. How has that been going?

A: On my [Father's] for the weekends?

Q: For the way the schedule was, did it go pretty good?

A: Yeah.

Q: So I heard today that you told [Mother] or told someone that you wanted to go to the Bethel Park school?

A: Yes.

Q: How did that come about? Who gave you the idea of going to Bethel Park?

- 8 -

A: So when I'm with [Mother] every time, I -- so we drive past a lot of schools. I said I wanted to be there and I just want to be with [Mother]. I don't want to live with [Father].

Q: Okay. So what happened that you said that you want to live with [Mother] and not [Father]?

A: So, I told [Mother] and she said, okay, and she told [Father]; next thing you know, all this, we're all here.

Q: So did they tell you why you're here?

A: Yes.

Q: Who told you?

A: Wait.

Q: Who told you why we're here today, [Mother] or [Father]?

A: Nobody.

Q: Nobody. So you didn't ask questions: why am I going to Clearfield Courthouse? Did you ever ask anyone that?

A: No.

Q: So they just got you up this morning, you put on a nice pair of pants and bowtie?

A: No. Mediation, like the day before, my [Father] told me.

Q: I'm talking about today, who told you?

A: Because when we left, [Father] told me that we were going to mediation -- or, not mediation.

Q: For today?

A: Yeah, for today.

Q: And [Mother] never told you that?

A: No.

N.T., 8/17/2022, at 8-9. Additionally, on cross-examination, Child indicated that Mother did not tell him that Bethel Park School District is better than Moshannon Valley.

> Q: When you said to the judge, you told [Mother] and then [Mother] told [Father]; do you remember saying that?
>
> A: Yes.
>
> Q: And then you said, and then all of this. So what did you mean by that?
>
> A: We're here in the room for court.
>
> Q: Okay. And you blame [Father] for that?
>
> A: Yes.
>
> Q: Okay. Did [Mother] talk to you at all about what [Father] did?
>
> A: No.
>
> Q: Okay. Did she ever talk to you about Bethel Park being better than Mo Valley?
>
> A: No.

*Id.* at 9-10.

Based on the foregoing testimony, it is clear that Child evinced a preference for residing with Mother and attending the Bethel Park School District. As such, the trial court erred by finding that Child had not stated a relevant preference. Because the custody order is not supported by competent evidence with respect to Section 5328(a)(7), we conclude that the court abused its discretion. *See Rogowski*, 291 A.3d at 60.

Accordingly, we vacate the order and remand the case to the trial court for consideration of Child's stated preference pursuant to Section 5328(a)(7), along with all of the other custody factors, and to issue a new custody order. Upon remand, we place no restrictions on whatever actions the trial court wishes to take with respect to Child's preference based on his maturity and judgment, including supplemental fact finding.

Based on this disposition, we need not consider Mother's remaining issues.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2023