J-S45003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TODD A. ABROMITIS, JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KAYLA J. ABROMITIS | : | No. 1138 MDA 2023 |

Appeal from the Order Entered July 14, 2023
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2015-CV-03393-DC

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED: FEBRUARY 16, 2024**

Todd A. Abromitis, Jr. ("Father") appeals the July 14, 2023 order that awarded Kayla J. Abromitis ("Mother") (collectively, "Parents") primary physical custody of Parents' daughter, A.A., born December 2013, during the school year while granting Parents equally shared physical custody during the summer months.  We affirm.

We glean the relevant factual and procedural history of this matter from the certified record.  Parents were married in May 2013, and separated in February 2015.  They reached an agreement concerning custody of A.A. in June 2015, which provided Parents would share legal custody.  **See** Order, 6/4/15, at ¶ 1.  Under this agreement, Mother exercised primary physical custody of A.A., with Father having partial custody rights on alternating

_____

[*] Former Justice specially assigned to the Superior Court.

weekends and one weekday. *Id*. at ¶¶ 2-5. The parties reaffirmed these general custody parameters in a subsequent agreement in November 2015. *See* Order, 11/9/15, at ¶¶ 1-4. Ultimately, Parents' divorce was finalized in August 2016. Thereafter, the parties generally abided by the dictates of the above-referenced agreements and were co-parenting successfully from approximately August 2016 through January 2022.

Following Parents' divorce, Father relocated to Middletown, Pennsylvania, where he currently resides with his wife ("Stepmother"). Father and Stepmother share their home with their son, L.A., who was born in November 2022, and Stepmother's daughter, J.B., who was twelve years old at the time of the custody hearings in this case. *See* N.T., 3/1/23, at 5. Mother lives in Camp Hill, Pennsylvania with A.A., maternal grandmother, and Mother's son, B.J.S., who was five years old at the time of the hearings.[1] *See* N.T., 7/7/23, at 4, 8, 12.

A.A. attends private school at West Shore Christian Academy ("West Shore"), where she has been enrolled for several years after concerns arose regarding her progress in public school. *Id*. at 12-13. Specifically, A.A. was found to be approximately one and one-half years "behind" educationally upon her enrollment at West Shore. *Id*. at 12. Consequently, A.A. was receiving

---

[1] B.J.S. is not Father's child. Mother testified that she shares physical custody of B.J.S. with a different ex-husband on an approximately equal basis. *See* N.T., 7/7/23, at 12.

tutoring services from both an organization, Best Brains, and from Father's sister for a period of time. *Id*. at 13.

Against this backdrop, the relationship between the parties grew increasingly acrimonious. Sometime in 2020, an incident occurred between A.A. and J.B., wherein J.B. had "held down" A.A. in a locked bathroom in Father's house and kissed her. *See* N.T., 3/1/23, at 49; N.T., 7/7/23, at 25, 29-30. This incident sparked significant concern and led to the adoption of informal rules by the parties to prevent future incidents, *i.e.*, prohibiting the girls from being in the same room with closed doors. *Id*.

Due to the breakdown in the parties' relationship, A.A. ceased being tutored by Father's sister and Mother began to advocate for enrolling the child in supplemental classes through Sylvan Learning Center ("Sylvan"), which became a source of conflict for the parties due to logistics and cost concerns.[2]

In January 2021, Father filed a child abuse report with Child Protective Services ("CPS") claiming Mother had struck A.A. with a spatula. *See* N.T., 3/1/23, at 10-14. Thereafter, in July 2021, Father submitted a second referral claiming that Mother had "slapped" A.A. across her face. *Id*. at 15-18. Both claims were deemed to be unfounded. *Id*. at 18, 52.

---

[2] Although Mother referred to this organization several times in her testimony as "Sullivan Learning Center," the custody court eventually clarified that the correct name is "Sylvan Learning Center." *See* N.T., 7/7/23, at 70.

Several days after Father's second CPS referral, Mother contacted law enforcement and alleged that J.B. was sexually abusing A.A. in Father's home. *See* N.T., 3/1/23, at 19; N.T., 7/7/23, at 25-26. Specifically, Mother claimed that J.B. was "touching" A.A. and showing A.A. sexually inappropriate materials, such as drawings and pictures. *Id*. Ultimately, police determined that no abuse had occurred and no charges were filed in connection with Mother's report. *See* N.T., 3/1/23, at 19; N.T., 7/7/23, at 27.

Due to these allegations, Mother refused to allow Father to exercise physical custody of A.A. in his home while J.B. was present between July 4 and August 10, 2022. *See* N.T., 3/1/23, at 19-20. However, Mother did not prevent Father from exercising custody outside of his home, which included at least one instance when Father picked up A.A. from Mother's home for several hours. *See* N.T., 3/1/23, at 52-53; N.T., 7/7/23, at 28.

On July 14, 2022, Father filed a petition to modify custody seeking "sole physical custody" of A.A. on the basis that Mother was an unfit and unsafe parent.[3] Petition to Modify Custody, 7/14/22, at ¶¶ 21-22. Specifically, Father's petition largely relied upon the same allegations set forth in the unfounded CPS reports he had filed earlier in the year. *Id*. at ¶¶ 7-11. Mother

_____

[3] The same day, Father also filed an emergency petition for special relief, which raised identical allegations and requested the same relief. *Compare* Petition to Modify Custody, 7/14/22, at ¶¶ 1-22 *with* Emergency Petition for Special Relief, 7/14/22, at ¶¶ 1-18. On July 22, 2022, the custody court denied Father's request for an emergency custody modification. No appeal was filed from this order denying emergency relief.

filed an answer and a counterclaim that, *inter alia*, requested that the court deny Father's request and permit Mother to maintain "primary physical custody" of A.A. *See* Answer and Counterclaim, 8/1/22, at ¶ 24.

On August 16, 2022, the court entered an interim custody order that maintained the status quo, *i.e.*, shared legal custody with Mother exercising primary physical custody of A.A. and Father having partial physical custody on alternating weekends and one day per week. This arrangement was confirmed in a second order entered in September 2022.

On March 6, 2023, the court appointed Allison Hastings, Esquire, to serve as guardian *ad litem* ("the GAL") to represent A.A.'s best interests at the custody hearings. To that end, the GAL met with A.A. on several occasions and interviewed various individuals involved with this case. She also prepared and filed a report memorializing what she believed was in A.A.'s best interests. Specifically, she recommended that Mother be awarded primary physical custody of A.A. during the school year and that Parents share custody equally on a weekly basis during her summer break. *See* N.T., 7/7/23, at 81-82.

The court held a custody trial on March 1, 2023, and July 7, 2023. During these proceedings, Mother, Father, Stepmother, the GAL, and the paternal and maternal grandmothers each testified. Separately, the court interviewed A.A. *in camera*. Between the first and second days of the custody trial, we note that A.A. was formally diagnosed with attention deficit hyperactivity disorder ("ADHD"). *See* N.T., 7/7/23, at 22.

On July 14, 2023, the trial court entered an order, which: (1) maintained shared legal custody between Parents; (2) awarded Mother primary physical custody during the school year and Father partial physical custody on alternating weekends and each Tuesday evening; and (3) provided for equally shared physical custody during summer break on an alternating weekly basis. The order also directed that A.A. be enrolled at Sylvan and provided that Mother would be responsible for the "initial" costs with the option to seek future "allocation" from Father through separate domestic relations litigation. The same day, the trial court also filed a memorandum opinion detailing its findings as to the factors set forth at 23 Pa.C.S. § 5328(a).

Father filed a timely notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court responded by filing a responsive opinion pursuant to Rule 1925(a)(2)(ii). On appeal, Father raises the following issues for our consideration:

1. Whether the [trial] court's conclusions were against the weight of the evidence presented through trial regarding custody factors one, two, four, six, eight, ten, thirteen, and sixteen?

2. Whether the evidence presented to the court was insufficient to deny Father 50/50 custody and give [Mother] primary physical custody during the school year?[4]

_____

[4] As set forth in his original request for modification, Father initially requested "sole physical custody" of A.A. *See* Petition to Modify Custody, 7/14/22, at ¶¶ 21-22. At the July 7, 2023 custody hearing, however, Father abandoned
*(Footnote Continued Next Page)*

Father's brief at 1-2 (cleaned up).[5]

Our standard and scope of review in this context is well-established:

Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**Rogowski v. Kirven**, 291 A.3d 50, 60-61 (Pa.Super. 2023) (cleaned up).

As with all custody-related matters, this Court's "paramount concern is the best interest of the child involved." **Id**. at 61 (internal citation and

---

this position and instead requested equally shared physical custody between the parties. **See** N.T., 7/7/23, at 117 ("Essentially this is coming down to whether or not [Father] is capable and should be given the opportunity to have week on/week off to start on the right foot with [A.A.] regarding her education."). This apparent revision to the scope of Father's requested relief does not materially impact our holding in this matter.

[5] Mother has filed a motion to dismiss based upon Father's failure to comply with various Rules of Appellate Procedure pertaining to the reproduced record and his brief. As these transgressions have not impeded our ability to review the issues raised on appeal, we deny Mother's motion.

quotation omitted). Indeed, Pennsylvania law provides that the court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S. § 5338(a). To that end, the Child Custody Act sets forth sixteen factors at § 5328(a) that a court must consider prior to modifying an existing custody order. *See E.B. v. D.B.*, 209 A.3d 451, 460 (Pa.Super. 2019). While a court's consideration of these factors is mandatory, "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *Id*. (cleaned up).

The statute provides as follows:

**(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in [§] 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

- 8 -

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a). In order to evidence its consideration of these required factors, a custody court must set forth its best-interest determination "prior

to the deadline by which a litigant must file a notice of appeal." ***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa.Super. 2014).

Instantly, the trial court provided a timely and complete assessment of the relevant § 5328(a) factors in a memorandum opinion filed contemporaneously with the July 14, 2023 order. ***See*** Memorandum Opinion, 7/14/23, at unnumbered 1-4. Specifically, the court found that the factors set forth at subsections (a)(3), (4), (10), and (11) favored Mother. The remaining factors were either neutrally weighted or irrelevant. As we discuss *infra*, the court noted that A.A.'s need for academic intervention was an additional, relevant factor that informed its decision pursuant to § 5328(a)(16), but did not militate in favor of either parent. Essentially, the court called upon Parents to do better for their daughter. ***See id***. at 4. No custody factors favored Father.

Father's first claim for relief challenges the trial court's findings with respect to the factors at § 5328(a)(1), (2), (6), (8), (10), (13), and (16).[6] ***See*** Father's brief at 6-20. Of the challenged considerations, the trial court

_____

[6] Although Father also purports to challenge the trial court's findings pursuant to 23 Pa.C.S. § 5328(a)(4), his brief contains no salient discussion or mention of this statutory provision aside from being listed in Father's statement of questions presented. ***See*** Father's brief at 1, 5. Accordingly, we find that Father has waived this claim pursuant to Pa.R.A.P. 2119 for failure to cite any relevant authorities or submit any pertinent discussion. ***See Coulter v. Ramsden***, 94 A.3d 1080, 1088-89 (Pa.Super. 2014) ("The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. . . . [A]rguments which are not appropriately developed are waived.").

determined that all but the tenth factor were either neutral or inapplicable. We will address each subsection in turn.

The factor at § 5328(a)(1) concerns which party is "more likely to encourage and permit frequent and continuing contact between the child and another party," which the trial court determined favored neither parent. Father asserts that the court erred in finding this factor neutral since Mother prevented A.A. from being in Father's house between July 4 and August 10, 2023. **See** Father's brief at 6-7; **see also** N.T., 3/1/23, at 19 (Father testifying that this interlude lasted for only one month).[7] Instead, Father contends that this factor should favor him.

While acknowledging that Mother interfered with Father exercising unfettered physical custody of A.A. at his home between July 2022 and August 2022, the trial court concluded that Mother was justified in doing so while the allegations concerning J.B. were being investigated. **See** Memorandum Opinion, 7/14/23, at unnumbered 2 ("The [c]ourt would have preferred that Mother file her own petition for modification rather than engage in self-help. **Nonetheless, the court believes the incident with Father's stepdaughter warranted a separation at the time.**" (emphasis added)). Given the nature of the allegations concerning J.B. and the history between her and A.A., we do not find the trial court's determination to be unreasonable.

---

[7] To the extent Father asserts that this non-custodial period lasted for longer than approximately one month, his own testimony belies such a claim.

- 11 -

Furthermore, it is also clear from Parents' respective testimony that Father **was** able to exercise physical custody of A.A. outside of his home during this time period. **See** N.T., 3/1/23, at 52-53; N.T., 7/7/23, at 28. Finally, Mother's short-lived restriction ended once the investigation into J.B.'s alleged abuse of A.A. concluded without a finding of objectionable behavior. Our review indicates that this one-month interlude was the only instance in which physical custody became an intractable dispute.

Based on the foregoing, the record supports the trial court's conclusion that § 5328(a)(1) did not weigh in favor of either party. Accordingly, we will not disturb its determination.

Father's next argument concerns § 5328(a)(2), which pertains to "present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child." In his brief, Father essentially seeks to re-litigate the unfounded child abuse allegations he leveled against Mother in 2022, arguing that the court should have credited these claims in its weighing of § 5328(a)(2). **See** Father's brief at 9-11.

In considering the trial court's analysis of this factor, we emphasize that the instant case included multiple claims of abuse implicating Parents' respective households. Specifically, Father accused Mother of using inappropriate corporal punishment, while Mother accused Father's

stepdaughter of sexually abusing A.A. *See* N.T., 3/1/23, at 10-20; N.T., 7/7/23, at 25-27. Although Mother admitted that she had struck A.A. with a spatula in January 2022, Father similarly conceded that an inappropriate episode occurred between J.B. and A.A. in his home.[8] *Compare* N.T., 7/7/23, at 49 *with* N.T., 3/1/23, at 49. Furthermore, the competing allegations of abuse advanced by the parties were deemed to be universally unfounded by the investigating agencies. *Id*. Contrary to Father's arguments, there are no substantiated allegations of "present or past" abuse in the case *sub judice*. Since the trial court's determination of neutrality is supported by the certified record, we observe no abuse of discretion or error of law in the trial court's conclusion that § 5328(a)(2) favored neither Mother nor Father.

Next, Father challenges the court's finding as to § 5328(a)(6), which addresses "[t]he child's sibling relationships." Father submits that the court should have found this factor to be in his favor because awarding Mother primary custody during the school year will negatively impact A.A.'s

---

[8] After interviewing A.A., the GAL testified concerning her belief that the incident in which Mother struck the child with a spatula was an isolated incident wherein Mother and A.A.'s relationship reached a "boiling point." *See* N.T., 7/7/23, at 84. The GAL reported that A.A. was very "communicative" about this episode and reported that nothing similar had happened since in Mother's care. *Id*. The trial court credited this testimony in rendering its decision. *See* Memorandum Opinion, 7/14/23, at unnumbered 2 ("The child's recent escalation of poor behavior resulted in Mother using inappropriate force on [A.A.] last year. The [c]ourt believes that Mother has altered this practice."). We observe no basis upon which to overturn this credibility finding since it is well-supported by the record.

- 13 -

relationship with L.A., her newborn half-brother. *See* Father's brief at 12 ("By not allowing [Father] to have shared custody during the school year, this impedes the relationship with [A.A.] and her youngest sibling as he gets older, hits new milestones, and becomes more playful.").

As detailed in the factual recitation above, A.A. has relevant half-sibling relationships in both of her respective households. While Father asserts in this Court that the trial court should have allotted more weight to A.A.'s relationship with L.A., our review of the certified record reveals little evidence to support such an assessment. Aside from noting that L.A. had been born in November 2022, there is virtually no further testimony concerning him. *See* N.T., 3/1/23, at 5-6. Furthermore, Father has cited no such evidence in his brief. By contrast, Mother testified that A.A. has a close relationship with B.J.S. *See* N.T., 7/7/23, at 37 ("They're best friends."). Overall, Father's argument on this point amounts to little more than a bald assertion that the trial court should have accorded more weight to A.A.'s prospective relationship with L.A.

Based upon the foregoing, we observe no abuse of discretion or error of law in the trial court's findings pursuant to § 5328(a)(6). From the limited information available, we gather that the certified record supports the court's finding that this factor was neutral, *i.e.*, that A.A. has equally valid concerns with respect to her sibling relationships in both households. Accordingly, no relief is merited on this aspect of Father's claim.

We now turn to Father's arguments pursuant to § 5328(a)(8), which concern any "attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm." Although the trial court concluded that this factor was neutral, it was "quite certain" that A.A. was being provided with inappropriate information concerning the proceedings. Memorandum Opinion, 7/14/23, at unnumbered 3. Father submits that this factor should have "strongly" favored him. *See* Father's brief at 12-15.

Father has largely mischaracterized the testimony of record, which establishes that Parents were engaging in mutual attempts to influence A.A.'s opinion and, thereby, gain an advantage in the custody proceedings. Indeed, the trial court's *in camera* interview of A.A. led it to conclude that both Mother and Father were engaging in mutually inappropriate behavior, leading it to issue the following admonition to the parties: "Cautionary message to both of you: She knows what's going on. She has got everything as far as – I mean, she – she really knows what's going on. So just be careful. These types of adult things bleed into a child's life and can irreparably shape her for years to come." N.T., 3/1/23, at 3.

Our review of A.A.'s *in camera* averments supports this finding. Specifically, she disclosed that Mother had shared disparaging information that was critical of Stepmother, including Stepmother's history of drug abuse, criminal behavior, and medical history. *See* N.T., 2/28/23, at 24-25, 27-28.

However, A.A. concomitantly averred Father had attempted to bribe her into providing testimony beneficial to his custody modification request by promising to buy her a hamster. *Id*. at 21-22, 53-55.

In sum, we find no abuse of discretion or error of law upon which to overturn the trial court's finding with respect to § 5328(a)(8). As discussed above, the certified record reflects effectively equal efforts by Parents to turn A.A. against the other. Therefore, no relief is due.

Father also challenges the court's findings as to § 5328(a)(10), which addresses "[w]hich party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child." Unlike the other factors that father challenged on appeal, the trial court actually weighed this consideration in Mother's favor, reasoning that she is the "point person" for A.A.'s tutoring arrangements and has a better record in contacting and communicating with A.A.'s school. *See* Memorandum Opinion, 7/14/23, at unnumbered 3. By contrast, Father asserts that this factor "should favor him and that [A.A.] would be better off with him for stability and continuity in [her] education." Father's brief at 17.

Contrary to Father's arguments, the trial court's finding pursuant to § 5328(a)(10) is amply supported by the certified record. The GAL relayed without contradiction that Father has a poor reputation for timely and effective communication with A.A.'s educational providers. *See* N.T., 7/7/23, at 97 ("[T]he school counselor, the teacher – I don't want to use the word

- 16 -

complained, but indicated that [F]ather was not responsive to their messages."). Although Father complains that Mother unilaterally enrolled A.A. in tutoring programs without his consent or input, Father's own testimony reflects he failed to take any significant action concerning tutoring when confronted with A.A.'s educational issues. *See* N.T., 3/1/23, at 44-46; *see also* N.T., 7/7/23, at 105 ("I vaguely looked at Sylvan, but that was about it."). Moreover, there are concerns about A.A.'s educational priorities in Father's home. Specifically, A.A. testified *in camera* that Stepmother has forged documentation attesting that A.A. had completed assignments that she, in fact, had not finished. *See* N.T., 2/28/23, at 43-44. Overall, we find no abuse of discretion or error of law in the trial court's weighing of the factor at § 5328(a)(10). Therefore, no relief is due.

Father's next line of argument concerns § 5328(a)(13), which implicates "[t]he level of conflict between the parties and the willingness and ability of the parties to cooperate with one another." The trial court determined that the conflict was mutually attributable to Parents. *See* Memorandum Opinion, 7/14/23, at unnumbered 4 ("[N]either parent trusts each other on any level."). Father attempts to frame Mother as the sole bad actor, heaping upon her all of the blame for the parties' inability to co-parent. *See* Father's brief at 18 ("[T]he only reason the parties do not get along anymore is because [Mother] will make decisions without consulting [Father] or giving him enough time to respond.").

Father's effort to recast Mother as a lone villain falls immediately flat when confronted with the testimony of record. As detailed above, Parents' testimony indicates that they have both advanced unfounded reports of child abuse against one another. *See* N.T., 3/1/23, at 10-19; N.T., 7/7/23, at 25-27. Similarly, A.A.'s testimony indicates that both parties are responsible for undertaking efforts to turn A.A.'s opinion against the other parent. *See* N.T., 2/28/23, at 21-22, 24-25, 27-28, 53-55. There is little question that Parents are jointly responsible for creating the extraordinary level of conflict in their relationship. To the extent Father contends that Mother is solely responsible for their co-parenting conflicts, the record does not support his position. Therefore, no relief is due on this claim.

Father's final argument respecting the custody factors concerns the court's findings pursuant to § 5328(a)(16), which provides the court with the opportunity to consider "[a]ny other relevant factor" not already explicitly listed in the statute. Here, the trial court utilized this supplemental factor to essentially call upon Parents to, collectively, do a better job of cooperating with respect to A.A.'s education, as follows:

> This child was failing school during the [first] and [third] quarter of the 2022-2023 school year which resulted in her being . . . placed on academic probation. That has since been lifted. She has a recent diagnosis of ADHD. She has not been placed on any medications yet. She needs to be evaluated for an [individualized educational plan]. **Her parents need to give her the tools to succeed and must put their current animosity aside in order to do so.**

Memorandum Opinion, 7/14/23, at unnumbered 4 (emphasis added). Thus, we discern that this custody factor was deemed to be neutral.

Although styled as such, Father does **not** explicitly challenge the trial court's finding with respect to § 5328(a)(16). Instead, he utilizes this portion of his argument to impugn the court's directive concerning A.A.'s enrollment at Sylvan on financial grounds. **See** Father's brief at 19 ("The [c]ourt also ordered, as part of custody, that [A.A.] must go to [Sylvan] and that [Mother] can file for a deviation with support. . . . Father already pays child support and struggles with the [o]rder that does not include paying for [Sylvan]."). Thus, Father contends this part of the order should be stricken.

Father's argument concerning potential financial hardship is premature. The court's order provided that Mother, alone, would bear the initial costs of A.A.'s enrollment at Sylvan. **See** Order, 7/14/23, at ¶ 25 ("The child will be enrolled in tutoring through [Sylvan]. **Mother will initially pay the costs and may seek an allocation of this cost through Domestic Relations.**" (emphasis added)). Any arguable financial burden upon Father that may accrue due to A.A.'s enrollment at Sylvan is entirely dependent upon facts that have not, and may not, come to pass. Specifically, the certified record does not disclose that Mother has sought any financial contribution from Father in connection with this specific custody finding. More importantly, no trial-level court has yet ruled upon any such request on its relative merits. Thus, Father's claim on this point is purely speculative.

We decline Father's invitation to issue an impermissible advisory opinion concerning circumstances not squarely before this Court. **See**, **e.g.**, **Somerset County Children and Youth Services v. H.B.R.**, 155 A.3d 627, 631 (Pa.Super. 2017) (holding that "it would be premature to reach the merits of a hypothetical situation" concerning an agency's potential entitlement to financial reimbursement before it had sought remuneration).

To the extent that Father intends to dispute the trial court's findings with respect to § 5328(a)(16), we discern no abuse of discretion or error of law in the court's finding that both parties need to put aside their differences in order to better provide for A.A.'s educational development. As detailed throughout this writing, the conflict and acrimony of Parents' relationship is attributable to both of their actions in equal measure. Thus, we also affirm the trial court's finding pursuant to § 5328(a)(16).

Having found no abuse of discretion or error of law in the trial court's weighing of the factors set forth at § 5328(a), we conclude that Father's first bevy of claims for relief is without merit.

Although framed as a separate matter, Father's second issue is simply a restatement of his earlier arguments. **See** Father's brief at 20-24. The gravamen of these claims is that the trial court should have credited the evidence favoring Father instead of the evidence favoring Mother. **Id**. at 20 ("In pointing out particular matters in each of the aforementioned factors, [Father] avers that the evidence in fact favored him.").

As discussed at length above, we have determined that Father's numerous specific challenges to the trial court's findings are meritless since the court's conclusions are supported by competent evidence. Accordingly, we are bound by these findings and may not overturn them. *See Saltz v. Rinker*, 902 A.2d 509, 512 (Pa.Super. 2006) ("[O]n the issues of credibility and weight of the evidence, we defer to the findings o[f] the trial judge. . . . [A]ppellate interference is allowed only where it is found that the custody order is manifestly unreasonable as shown by the evidence of record."). Therefore, Father's second issue does not merit relief.

Based on the foregoing, we find no abuse of discretion or error of law in the trial court's order. Thus, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/16/2024