J-S13016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

LEONA E. BRODA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
ROBERT G. KLUVER, JR. :
:
Appellant : No. 1498 WDA 2023

Appeal from the Order Entered November 17, 2023
In the Court of Common Pleas of Somerset County Civil Division at
No(s): CP-56-CV-0000136-2016

BEFORE: KUNSELMAN, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.: **FILED: May 20, 2024**

Robert G. Kluver, Jr. ("Father") appeals pro se from the order entered

by the Somerset County Court of Common Pleas ("trial court") denying his

petition to find Leona E. Broda ("Mother") in contempt of the parties' custody

order.[1] On appeal, Father argues that the evidence established Mother was

in contempt of the parties' custody order because she physically disciplined

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Although this appeal involves a contempt of custody action, we will use the
parties' names in the caption "as they appeared on the record of the trial court
at the time the appeal was taken." Pa.R.A.P. 904(b)(1). "[U]pon application
of a party and for cause shown, an appellate court may exercise its discretion
to use the initials of the parties in the caption based upon the sensitive nature
of the facts included in the case record and the best interest of the child."
Pa.R.A.P. 904(b)(2); **see also** Pa.R.A.P. 907(a). Neither party applied for the
use of initials in the caption. We will, however, refer to the children involved
in this dispute by their initials to protect their identity.

their children, which the custody order expressly prohibited. After review, we reverse and remand for further proceedings.

Father and Mother were never married, but had three sons together, J.G.K. (born October 2002), J.D.K. (born June 2007), and J.L.K. (born January 2009). The parties have a contentious relationship and have each filed numerous petitions seeking custody modification. In May 2016, the parties agreed to share legal and physical custody. Subsequently, the parties learned J.G.K. had sexually abused his younger siblings.[2] Recognizing the younger children had to be separated from J.G.K., in September 2016, the parties agreed to a custody arrangement whereby the younger children stayed with Mother on weekdays while J.G.K. stayed with Father, and Mother had custody of J.G.K. on the weekends, while Father had custody of the younger children on alternating weekends. Mother was required to find childcare for the younger children when J.G.K. was also at her home on the weekends. On November 15, 2017, the trial court entered a custody order specifying the parties' agreement that would keep the younger children separate from their older brother.

---

[2] According to Father, J.G.K. was adjudicated delinquent of indecent assault in November 2016.

Following a protracted history, on November 8, 2021,[3] the parties entered into a custody agreement for the two younger children, which superseded all prior orders.[4] The order gave Mother and Father shared legal custody, Mother primary physical custody during the school year, Father partial physical custody during the school year, and the parties shared physical custody during the summer. Relevant here, the order also stated that the parties were prohibited from physically disciplining the children. Notably, the order did not state anything related to J.G.K., and contained no prohibitions for contact between the minor children and their older brother.

On November 6, 2023, Father filed a petition for contempt of the custody order, noting that Mother violated the order by physically disciplining the children. Specifically, Father argued Mother attempted to tase J.D.K. with the assistance of J.G.K. That same day, Father filed an emergency custody petition seeking full custody of the minor children. The trial court held a hearing.[5] The trial court interviewed J.D.K. and J.L.K. in chambers outside

---

[3] The order was dated October 26, 2021, but not filed until November 8, 2021.

[4] J.G.K. was not subject to the custody order because he was over eighteen years old at the time.

[5] Father also filed two protection from abuse petitions on behalf of the younger children and himself against Mother and J.G.K. The trial court initially granted temporary PFA orders. However, following the hearing, the trial court vacated the temporary PFA orders and declined to enter final PFA orders against Mother and J.G.K. The trial court's denial of Father's PFA petitions against Mother and J.G.K. are the subject of separate appeals.

the presence of Mother and Father. Following the interviews, the trial court found that neither child had been physically disciplined by Mother since the entry of the parties' November 2021 custody order. Further, the trial court found that neither child was fearful of Mother nor desired a change to the existing custody order. Therefore, the trial court denied Father's contempt petition, concluding that there were no grounds for finding Mother in contempt. Father filed a timely appeal and a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925.

Father raises the following question for our review: "Did the trial court abuse its discretion when it failed to find [Mother] in contempt of the existing custody order based on the preponderance of evidence?" Father's Brief at 5.

"In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion." *Rogowski v. Kirven*, 291 A.3d 50, 57 (Pa. Super. 2023) (citation omitted). "This Court must place great reliance on the sound discretion of the trial court when reviewing an order of contempt." *Id.* (citation and brackets omitted).

Father contends that the trial court abused its discretion in failing to find Mother in contempt of the custody order because the evidence at the hearing established that Mother both physically disciplined J.D.K. and attempted to physically discipline the child. Father asserts that J.D.K. testified that Mother

had committed other acts of physical discipline—including slapping him in the face and throwing a lighter at him—since the entry of the November 2021 custody order. Father's Brief at 36-38; *see also id.* at 41-42 (noting that the trial court found the children's testimony to be credible). He further points to J.D.K.'s statements that Mother activated an electronic device and attempted to force her way into his bedroom, and that J.D.K. wanted someone to call Father because he was in fear of being shocked. *Id.* at 27, 30. According to Father, the testimony at the hearing established that Mother committed acts of physical discipline and took "significant steps" toward using the device against J.D.K., and that such acts were prohibited under the custody order. *Id.* at 31, 36-38, 40-41. Father maintains that Mother was aware of the physical discipline prohibition in the custody order, noting that a week prior to the incident, Mother suggested to the children that she could use the electronic device to bypass the custody order if they did something wrong. *Id.* at 29.

Additionally, Father disputes the trial court's finding that Mother did not violate the November 2021 custody order, arguing the court erroneously conflated the PFA actions with the instant petition and that the custody order specifically prohibits physical discipline, not abuse. *Id.* at 32-34. Father asserts that the trial court could not justify the physical discipline where the custody order plainly restricted any such discipline. *Id.* at 38-40. Father further contends that J.G.K. was not allowed in the home when the children

were present under multiple custody orders, and this requirement was never modified by the November 2021 custody order. *Id.* at 43-44.

"To be in contempt, a party must have violated a court order, and the complaining party must satisfy that burden by a preponderance of the evidence." *J.M. v. K.W.*, 164 A.3d 1260, 1264 (Pa. Super. 2017) (citation and brackets omitted). "[T]he complainant must prove certain distinct elements[:] (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." *Id.* (citation omitted).

In the instant case, pursuant to the November 8, 2021 custody order, "both parties agree that the children shall not be physically disciplined." Custody Order, 11/8/2021, at 4.

At the hearing, J.D.K. testified that he and Mother had an argument about the death of his bearded dragon and that in his anger, he punched the birdcage. N.T., 11/17/2023, at 7, 13-14. At this point, J.D.K. indicated that he heard Mother's taser "go off" and "fight-or-flight kicked in." *Id.* at 7, 12; *see also id.* at 10-11 (wherein J.D.K. described the taser as looking like a small flashlight and electricity comes out of the top and further noted that Mother used the device on their cats when they did something wrong). J.D.K. stated that he ran to his room, shut the door, and held the door shut. *Id.* at 7-8. He testified that Mother attempted to push the door open and again

heard the click of the taser. *Id.* at 8. J.D.K. asked someone to call Father. *Id.*; *see also id.* at 9 (noting that J.L.K. called Father during the incident). Mother eventually called J.G.K. to open the door; thereafter, J.D.K. opened the door and wedged himself between the door and the wall. *Id.* Mother came into the room, took J.D.K.'s laptop, and left the room. *Id.* J.D.K. testified that Mother never used the taser on him. *Id.* at 11; *see also id.* at 11-12 (noting that a week before the incident, Mother stated she would use the taser on the children to bypass the custody order, but J.D.K. could not tell if she was being serious or joking).

During J.D.K.'s in camera testimony, the trial court asked him whether Mother had physically disciplined him since the entry of the November 2021 custody order, and J.D.K. replied "yes." *Id.* at 15-16. He indicated on one occasion, Mother "smacked" him across the mouth with an open hand after he called her a bitch. *Id.* at 17-18. J.D.K. also stated Mother hit him with a lighter when she thought he was going to throw something at her. *Id.* at 18-19. Finally, J.D.K. testified that on another occasion, Mother grabbed his face, yelled at him, and threw him onto his bed after he could not find his socks. *Id.* at 19-21; *see also id.* at 21-22 (noting that Mother had hit him with a belt prior to the entry of the November 2021 custody order). J.D.K. acknowledged that the incidents occurred because he was acting up or getting out of line and testified that Mother never hurt him. *Id.* at 19-20, 23. J.D.K.

stated he liked spending time with his Mother and was not afraid of her or being at her home. *Id.* at 24.

J.L.K. testified that Mother had not physically disciplined him in over four years. *Id.* at 34. J.L.K. indicated Mother only yells at him if he does something wrong. *Id.* Regarding the taser incident, J.L.K. confirmed that Mother and J.D.K. got into an argument about the care of his lizard and J.D.K. punched a birdcage during the argument. *Id.* at 36. J.D.K. ran into his room and Mother followed holding her phone and the "flashlight" that she used to shock the cats. *Id.*; *see also id.* at 37 (describing the electronic device as having a "9-volt shock" and stating that Mother indicated that it was like "touching an electric fence"). During the incident, J.G.K. began calling Father, but handed the phone to J.L.K. after Mother called J.G.K. to open the bedroom door. *Id.* at 36, 38. J.L.K. stated that Mother had never shocked him with the taser and that he had never seen her shock J.D.K. *Id.* at 37; *see also id.* at 38 (noting that he only saw Mother use the taser on one occasion with the cats). However, J.L.K. admitted that Mother threatened to use the device on J.D.K. during the argument. *Id.*

The trial court found there were no grounds to find Mother in contempt of the custody order. *Id.* at 43. The trial court stated the following:

> I will say there clearly was an incident that occurred when [J.D.K.'s] bearded dragon/lizard died. He clearly was upset with [Mother] believing that maybe something she did caused that to occur. He was clearly upset. He was clearly angry. He did some things that caused [Mother] to understandably get upset. And, unfortunately, it just escalated from there to the point where

- 8 -

[J.L.K.], [Mother], and [J.G.K.] all got upset and did things that they probably, looking back, realized they shouldn't have done. It shouldn't have gotten to that point.

… I don't find that any physical discipline occurred that would be a violation of the current [c]ustody [o]rder. And I don't find that any abuse occurred that would justify the entry of an [e]mergency [c]ustody [o]rder or for [the trial c]ourt to change the current custody order.

… My decisions are based on the firsthand information provided by [J.D.K.] and [J.L.K.], who were both present for these incidents[.] …

There were also allegations that [Mother] had used a belt to discipline [J.D.K.], but [J.D.K.] clearly told me that that has not happened in the last two years; and when I say the last two years, I'm emphasizing the last two years because the date of your [c]ustody [o]rder is November 8 of 2021, which means that it has been in place for roughly two years.

In order to find contempt, there must have been some violation of that [o]rder in the last two years. [J.D.K.] was clear though that in the last two years, there has not been any physical abuse nor has he ever been disciplined with a belt.

So that is my reason for not finding contempt of the current [c]ustody [o]rder.

*Id.* at 43-46; *see also* Trial Court Opinion, 1/9/2024, at 2 (unnumbered) (concluding that "neither child had been 'physically disciplined' by Mother since the entry of the parties' [c]ustody [o]rder, … and therefore there were no grounds for a contempt finding").

The trial court's denial of the contempt petition based upon the lack of evidence Mother used the electronic device on J.D.K. has record support. *See J.M.*, 164 A.3d at 1266 (finding that where mother did not contravene an existing court order, she could not be found in contempt). Likewise, Father's

- 9 -

claim regarding J.G.K.'s presence in Mother's home with the younger children does not establish Mother was in contempt, as the parties' custody order did not require the parties to continue to separate the children. ***See id.***

Nevertheless, we conclude that the trial court abused its discretion in summarily denying the contempt petition. The trial court wholly ignores the testimony it elicited from J.D.K. wherein he explicitly stated that Mother had "physically disciplined" him after the entry of the November 2021 custody order by smacking him across the mouth, hitting him with a lighter, and grabbing his face and throwing him onto his bed. Accordingly, the record clearly shows that Father proved Mother's contempt of the November 2021 custody order by the preponderance of the evidence. ***See E.B. v. D.B.***, 209 A.3d 451, 470 (Pa. Super. 2019) (concluding that the trial court abused its discretion in denying father's contempt petitions where there was evidence that mother had violated the custody order); ***see also J.M.***, 164 A.3d at 1264.

Therefore, we reverse the trial court's order. We remand the matter and direct the trial court to impose an appropriate sanction, which may or may not include a new custody arrangement if the court finds it to be in the minor children's best interests. ***See E.B.***, 209 A.3d at 470 n.18 (noting that upon remand from reverse of contempt order, the trial court could address modification of custody because it was addressing both modification and contempt petitions); ***see also N.A.M. v. M.P.W.***, 168 A.3d 256, 262 (Pa. Super. 2017) (noting that the trial court abused its discretion in failing to

impose sanctions on mother where she was in contempt of the custody orders).

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 5/20/2024