J-S06016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IAN SURRENA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMBER SURRENA | : | No. 1367 WDA 2024 |

Appeal from the Order Entered October 3, 2024
In the Court of Common Pleas of Erie County Civil Division at No(s):
12223 of 2023

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                    **FILED: April 11, 2025**

Ian Surrena ("Father") appeals from the order denying his petition for contempt against Amber Surrena ("Mother")[1] for failing to comply with the agreed-upon custody order for their five children (the "children").  We affirm.

The trial court summarized the relevant procedural and factual background of this matter:

> The parties are the parents or have custody of five children ranging in age from [three] to [eighteen] years.  (One child is

---

[1] The parties' names are "stated in the caption as they appeared on the record of the trial court at the time the appeal was taken," pursuant to Pa.R.A.P. 904(b)(1).  In an appeal in a custody action where the trial court has used the parties' full name in the caption, "upon application of a party and for cause shown, an appellate court may exercise its discretion to use the initials of the parties . . . based upon the sensitive nature of the facts included in the case record and the best interest of the child."  Pa.R.A.P. 904(b)(2).  Neither party has applied to this Court for the use of initials in the caption.  Nevertheless, we refer to the minors involved in this custody dispute as the "children" to protect their identity.

related but not their birth child.) They have been operating under an October 17, 2023 custody order . . . . That order provides for shared legal and physical custody. [**See** Order, 10/17/23, at ¶¶ 2(a)-(d).] Of particular significance is Paragraph 2(d) of the order that relates to the children's religious observance. It states: "The father **may** take the children to church on Sunday." [**Id**. at ¶ 2(d) (emphasis added).] The parties are Jehovah's Witnesses and have raised the children as such. [**See** N.T., 10/2/24, at 4.] Currently the parties are going through a divorce[. **See id**. at 14.]

In his custody contempt petition and during the hearing conducted on October 2, 2024, [Father] alleged that on August 24, 2024, [Mother] contemptuously refused to allow him to take the children to Sunday services. The children have also attended services each Thursday and during his custodial Sundays, but [Father] does not allege that [Mother] interferes with that attendance. [**See id**. at 6.] Notably, [Father] filed the contempt petition only ten . . . days after [Mother's] refusal which was, it appears, after only . . . one . . . Sunday when the children were not available for services.

Under the current custody order [Father] has the children every Thursday, but weekends are alternated between the parties. [**See** Order, 10/17/23, at ¶¶ 2(a)-(b).] Three of the children now live with him by their choice. [**See** N.T., 10/2/24, at 19, 24.] For ten . . . months [Mother] did not object to the children's attendance at Sunday services during her custodial Sundays. [**See id**. at 7-8.] However, on August 24, 2024, she notified [Father] that she no longer wanted to give up four . . . hours of her Sunday [custodial] time. In part, this appears to be related to a disagreement over a holiday break. [**See id**. at 9-10.] (There are additional points of contention related to [Mother's] frustration with church members relative to the parties' divorce. [**See id**. at 14.])

Trial Court Opinion, 11/21/24, at 1-2 (footnotes and unnecessary capitalization omitted).

At the conclusion of the Father's case-in-chief, Mother moved to dismiss the petition on the ground that Father had not met his burden of proving that she was in contempt of the custody order. The trial court granted Mother's

motion and entered an order denying the petition. Father filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Father presents the following issue for our review:

> Whether the [trial court] erred and/or abused its discretion in denying [Father's] petition for contempt, thereby denying [Father] the ability to take the parties' children to church on Sunday, where the court read additional qualifications into the pertinent provision of the parties' custody order and/or failed to give it any effect.

Father's Brief at 2 (unnecessary capitalization omitted).

We review the trial court's ruling on a custody contempt petition to determine whether the court committed a clear abuse of discretion. *See Rogowski v. Kirven*, 291 A.3d 50, 57 (Pa. Super. 2023).

> To be in contempt, a party must have violated a court order, and the complaining party must satisfy that burden by a preponderance of the evidence. Specifically, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which [she] is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*Id*. (citation omitted). Additionally, the court must find that the contemnor violated an order that is "definite, clear, and specific — leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct." *Gross v. Mintz*, 284 A.3d 479, 490 (Pa. Super. 2022) (citation and emphasis omitted). The court must infer all inferences and ambiguities in the underlying order in favor of the alleged contemnor. *See id*.

Father argues that he proved each of the necessary elements for a finding of civil contempt: (1) there was no dispute that Mother had notice of the custody order; (2) Mother's decision not to permit Father to take the children to church on Sundays was volitional; and (3) Mother acted with wrongful intent as her decision to prevent church attendance "was a 'tit-for-tat' response to [Father's] reluctance to accommodate her desires in other areas of custody." Father's Brief at 10. Father avers that the trial court's refusal to find Mother in contempt "is contrary to the children's religious upbringing and their best interests." *Id*.

Father further contends that the language of the custody order was abundantly clear that he had the right to take the children to church every Sunday:

> [T]here would be no other reason to include subparagraph 2(d) if not to provide for [Father] taking the children to church every Sunday; he needs no express authorization to take the children to church (or anywhere else, for that matter) on the Sundays during which the children are otherwise in his physical custody. Disallowing [Father] the ability to take the children to church every Sunday gives subparagraph 2(d) of the custody order no effect whatsoever.

*Id*. at 8.

The trial court explained its reasoning for denying Father's contempt petition in its Pa.R.A.P. 1925(a) opinion:

> . . . Paragraph 2(d) of the controlling custody order permits [Father] to take the children to religious services on Sunday. The dispute centers on those Sundays when [Mother] has the children as [Father] is free to take them to services on Thursday (he has them every Thursday) and his custodial Sundays. Paragraph 2(d)

- 4 -

contains the permissive term "may[,"] not the word "shall[."] Contrast that language with the use of the word "shall["] in Paragraph 1, 2(a), (b), etc. of the order.[2] Furthermore, the word "Sunday" is not preceded by the adjectives "all[,"] "every" or any other modifier that indicate that [Mother] must make the children available for services every Sunday that she has the children. The fact that for some period of time she consented to the children's attendance during all of her Sundays could be construed as gratuitous on her part, and not as a requirement that she relinquish four . . . hours of her custodial time every Sunday that she has the children. Phrased another way, as the order is worded it does not appear to explicitly grant [Father] the unrestricted right to take the children to services every Sunday when [Mother] has them.

On the other hand, the order can reasonably be interpreted to permit church attendance during some of [Mother's] Sundays based upon the cooperation of the parties. . . . [T]he order could more clearly define the procedure to be used during [Mother's] custodial weekends, especially in light of the parties['] current positions on the subject of religious attendance. This is important because, "[a] conviction for violation of a court order can be sustained only if the order or decree was 'definite, clear, specific and left no doubt or uncertainty' in the mind of the person to whom it was addressed of the conduct."

When read in its entirety, the custody order contemplates cooperation between the parties. It appeared from the evidence presented at the contempt hearing that the parties until August 24[, 2024], for the most part, they had been able to do so.

The hearing held on October 2, 2024, was neither a custody conciliation conference nor a custody trial which, in th[e trial c]ourt's view, would be more suitable procedural vehicles to address the issue of church attendance, including the best interests of the children. Rather, it was a contempt proceeding during which the [Father] needed to meet the requisite burden of proof. As the parties' positions indicate, they interpret the custody order in different ways. However, reading the order in a way that requires [Mother] to make the children available for services

_____

2 **_See, e.g._**, Order, 10/17/23, at ¶¶ 1 ("The parents **_shall_** share the legal and physical custody of their children."), 2(b) ("The parents **_shall_** alternate weekends . . .") (emphases added).

some, but not every Sunday that she has the children is a reasonable interpretation.

Trial Court Opinion, 11/21/24, at 4-6 (line break added).

Based on our review, we conclude that the trial court did not abuse its discretion in denying Father's contempt petition as the custody order was not sufficiently "definite, clear, and specific" as to "leav[e] no doubt or uncertainty" that Mother violated the order. *Gross*, 284 A.3d at 490 (citation and emphasis omitted); *see also Rogowski*, 291 A.3d at 57. As the court explained, Paragraph 2(d) did not use mandatory language nor specify that it applied to Mother's custodial periods. Father offered one interpretation of Paragraph 2(d) as compelling Mother to permit Father to take the children to church every Sunday, regardless of whether it falls within her custodial time. However, "a 'plausible reading' of the underlying order is not enough to sustain a contempt order because all inferences and ambiguities in the underlying order must be construed in favor of the alleged contemnor." *Gross*, 284 A.3d at 490 (citation and some quotation marks omitted).

To the extent Father argues that Mothers' actions interfered with the children's religious upbringing and was contrary to their best interest, we agree with the trial court that the parties should address such matters in a custody, rather than contempt, proceeding. *See Rogowski*, 291 A.3d at 58 (providing that parents who share legal custody "are strongly encouraged to reach a consensus on decisions that affect a child's life, including . . . religious decisions[, but] when the parents reach an impasse in making decisions for a

- 6 -

child that implicates custody, [they] must turn to the trial court to decide their impasse"); *see also Hicks v. Hicks*, 868 A.2d 1245, 1249 (Pa. Super. 2005) (stating that "each parent must be free to provide religious exposure and instruction, as that parent sees fit, during any and all periods of legal custody" unless such religious instruction presents a substantial threat of harm to the child). Accordingly, we conclude that Father's issue merits no relief and affirm the order of the trial court denying his petition for contempt.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/11/2025