J-S16001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| WILLIAM PETERSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDREA B. RUSH | : | |
| | : | |
| Appellant | : | No. 1536 MDA 2024 |

Appeal from the Order Entered September 20, 2024
In the Court of Common Pleas of York County Civil Division at No(s):
2023-FC-002145-03

BEFORE: LAZARUS, P.J., BOWES, J., and LANE, J.

CONCURRING AND DISSENTING MEMORANDUM BY BOWES, J.:

**FILED: JULY 1, 2025**

I agree with my esteemed colleagues to the extent that they reject Mother's challenges to the trial court's weighing of the statutory custody factors and its division of custody between the parents. However, I cannot join their decision to uphold that portion of the appealed-from order that compels Mother to remit a court-authored Disclaimer impugning her credibility and motives in the event she deems it necessary in the future to report a suspicion of child abuse to a pertinent authority. Since I conclude that the trial court failed to justify its intrusion upon Mother's First Amendment rights, I respectfully dissent to the Majority's affirmance of the trial court's Disclaimer mandate.

The Majority initially deems Mother's compelled-speech claim waived by virtue of her failure to raise the issue with sufficient specificity in her Pa.R.A.P. 1925(b) statement. **See** Majority Memorandum at 7-8. It is true that she did not identify a procedural rules violation in her statement such that her claim is waived insofar as it relies upon the court's failure to adhere to Pa.R.C.P. 1531. Yet, Mother plainly raised a civil rights challenge in her statement, which the trial court understood to reproach the order's infringement on her right to freedom of speech.[1] **See** Trial Court Opinion, 11/19/24, at 29-31. As such, I do not deem waiver to apply. **Accord Commonwealth v. Laboy**, 936 A.2d 1058, 1060 (Pa. 2007) (reversing this Court's finding of Rule 1925(b) waiver where "the common pleas court readily apprehended [the a]ppellant's claim and addressed it in substantial detail"). **See also Wells v. Cendant Mobility Fin. Corp.**, 939 A.2d 343 (Pa. 2007) (applying **Laboy** in vacating this Court's ruling in a civil case).

The Majority next opines that, even if Mother did not waive her constitutional claim, she would not be entitled to relief, observing that "First Amendment protections historically encompass prohibitions on speech as

---

[1] The judge authoring the Rule 1925(a) opinion made a point of highlighting that she was "not the one that imposed the objected-to required [D]isclaimer on Mother's credibility and does not personally opine as to the propriety of— nor tacitly approve of—the imposition of such a declaration." Trial Court Opinion, 11/19/24, at 29. Rather, the judge provided the opinion in furtherance of the court's "duty . . . to provide the appellate court with relevant law and provide a response to the error complained of on appeal." **Id**. at 29-30.

opposed to compelled speech." Majority Memorandum at 8 n.7. Yet, the Supreme Court of the United States has held time and again that "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). In other words: "It is . . . a basic First Amendment principle that freedom of speech prohibits the government from telling people what they must say." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013) (cleaned up). *See also Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 796–97 (1988) ("There is certainly some difference between compelled speech and compelled silence, but in the context of protected speech, the difference is without constitutional significance, for the First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what **not** to say." (emphasis in original)). Consequently, I conclude that the order *sub judice* palpably implicates Mother's First Amendment rights.

Moreover, since "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech[,]" government-compelled speech amounts to "a content-based regulation of speech." *Riley*, 487 U.S. at 795. "Content-based restrictions on speech are presumptively unconstitutional and are subject to the strict scrutiny standard, which requires the government to prove that the restrictions are narrowly tailored to serve a

compelling state interest." ***Rogowski v. Kirven***, 291 A.3d 50, 61 (Pa.Super. 2023) (cleaned up). In conducting a *de novo*, plenary review of a challenge to a content-based speech regulation, "an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." ***S.B. v. S.S.***, 243 A.3d 90, 104 (Pa. 2020) (cleaned up).

In this vein, the Majority alternatively states that, "[i]n any event, the court was justified in requiring Mother to disclose the information contained within the Disclaimer where it bears directly upon 'the important governmental interest of protecting the psychological and emotional well-being of Child[.]'" Majority Memorandum at 8 n.7 (quoting ***S.B.***, 243 A.3d at 113). It is beyond peradventure that protecting children is a compelling government interest. ***See***, ***e.g.***, ***Shepp v. Shepp***, 906 A.2d 1165, 1173 (Pa. 2006). However, that is not dispositive of Mother's claim.

In order to justify the restriction on Mother's First Amendment rights, the trial court's mandate must both rest upon an evidentiary foundation supporting the finding that the forced speech furthers that compelling state interest **and** be narrowly tailored to do so. ***Id***. ("The state's compelling interest to protect a child in any given case, however, is not triggered unless a court finds that a parent's speech is causing or will cause harm to a child's welfare."); ***Rogowski***, 291 A.3d at 61 (citing ***S.B.***, 243 A.3d at 104-05). I

cannot conclude based upon the certified record before us that the trial court's order satisfies either of those requirements.

First, I discern no evidence that the compelling government interest in protecting Child was what prompted this aspect of the custody order. The best the trial court's Rule 1925(a) opinion could offer was that the trial judge "apparently felt that his order for Mother to make required disclosures when reporting concerns related to the child was to protect the psychological, emotional well-being, and privacy of the child, or similar interests." Trial Court Opinion, 11/19/24, at 31. My review of the transcript of the proceedings suggests that the trial judge instead sought to protect Father, not Child, through this directive. Although he expressed "concerns" about "alienating effects" of Mother's "weaponization" of reporting to gain an advantage in the litigation, he declined to find that Mother attempted to turn Child against Father or that Mother was less likely to attend to Child's emotional needs. **See** N.T. Hearing, 9/10/24, at 282-83.

I deem a more specific evidence-based finding necessary to justify this order. **Accord Rogowski**, 291 A.3d at 62–63 (vacating portion of custody order restricting the child's use of the terms "mom" and "dad," and compelling the parties to correct the child if she referred to a non-biological parent by the term, because there was no finding by the trial court that "use of the terms 'Dad' and 'Daddy' to refer to Stepfather posed a tangible risk of harm to the [c]hild"); **McClendon v. Long**, 22 F.4th 1330, 1338–39 (11th Cir. 2022)

(ruling sheriff's placement of signs stating "STOP" and "NO TRICK-OR-TREAT AT THIS ADDRESS" in the yards of registered sexual offenders violated the First Amendment where the government failed to offer evidence that the persons compelled to display the message "actually pose[d] a danger to trick-or-treating children or that these signs would serve to prevent such danger").

Furthermore, assuming *arguendo* that the order was designed to further the compelling interest of protecting Child, the certified record contains no indication that Judge Stambaugh even contemplated whether his directive was narrowly tailored to further that objective.[2]  I observe that several courts facing challenges to compelled speech have found First Amendment violations for want of narrow tailoring to achieve the goal of protecting children.  ***See***, ***e.g.***, ***McClendon***, 22 F.4th at 1338-39 (holding the government failed to show that the signs were narrowly tailored to "accomplish the compelling purpose of protecting children from sexual abuse" when the offenders were already under an imposed restriction to avoid trick-or-treaters); ***Sanderson v. Bailey***, 753 F.Supp.3d 773, 789–90 (E.D. Mo. 2024) (ruling portion of state Halloween statute mandating the posting of a sign stating "no candy or treats at this residence" was unconstitutional compelled speech because it was not

---

[2] Father's argument on the substance of this claim of error is limited to the bald statement that "the trial court complied with the relevant Pennsylvania case law by issuing an order narrowly tailored to serve the child's best interests."  Father's brief at 12.  As I detail *infra*, I find no support for Father's assertion in the certified record.

narrowly tailored to protect children where there were "other effective alternatives to achieve that interest").

Here, I discern no indication that the trial judge considered alternative means to achieve the goal of discouraging Mother from "weaponizing the child abuse process" rather than compelling her to state the Disclaimer the judge drafted if she made a future report of abuse. Meanwhile, I readily ascertain that he could have, for example, informed Mother that she would be held in contempt if she continued to make unfounded accusations for improper purposes, or authorized Father to disseminate that statement to the relevant authorities should he be faced with an investigation. Instead, the judge imposed a content-based restriction on Mother's free speech rights without acknowledging that they were implicated, let alone explaining why it deemed the order necessary to further his unspecified goal.

I would hold that the First Amendment requires a far more thorough foundation for the state's incursion upon Mother's "decision [about] what to say and what **not** to say" than what the trial judge established in this case. *See Riley*, 487 U.S. at 797. Therefore, to the extent that the Majority affirms the government's infringements upon Mother's free speech rights that are unjustified by the certified record in this case, I must register this dissent.