J-S30001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COLIN J. TITUS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SIERRA M. TITUS | : | |
| | : | |
| Appellant | : | No. 396 MDA 2024 |

Appeal from the Order Entered February 16, 2024
In the Court of Common Pleas of Luzerne County
Civil Division at No(s):  201903737

BEFORE:   PANELLA, P.J.E., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:               **FILED: OCTOBER 25, 2024**

Sierra M. Titus ("Mother") appeals from the order entered in the Luzerne County Court of Common Pleas that granted the Petition for Modification of Custody of Colin T. Titus ("Father") and granted the parties shared physical custody of their minor child (d.o.b. 2/2017) ("Child").[1]

---

[*] Former Justice specially assigned to the Superior Court.

[1] The order also granted Father's petition for contempt for Mother's actions at Child's soccer game in violation of the most recent custody order filed on January 17, 2023. The order directed Mother could purge the contempt by following all court orders. *See* N.T., 2/9/24, at 475; *see also* Custody Order, 1/17/23, at ¶¶ 8 (providing the parties shall encourage Child's involvement in educational and recreational activities and cooperate to ensure Child attends activities to the maximum extent possible), 10 (directing neither party shall do anything to alienate the affection of Child from the other party). Mother does not challenge the contempt finding, which had no bearing on the custody award.

Mother and Father are the biological parents of Child. The parties were married from 2015 until 2019. On April 4, 2019, Father filed a custody action seeking shared legal custody and partial physical custody of Child. On April 30, 2019, the court granted the parties shared legal custody, Mother primary physical custody, and Father partial physical custody.

The background of this case is rather litigious, with both parties filing petitions for modification and contempt prior to Father's May 23, 2023 petition for modification at issue in this case. In this petition for modification, Father sought shared (50/50) physical custody of Child. The trial court conducted a 3-day custody trial on February 5, 6, and 9, 2024. Mother, Father, maternal grandmother, paternal grandmother, L.M. (Father's friend), and A.S.F. (Father's friend) testified. The court interviewed Child in-camera.

Father also presented the testimony of Luzerne County Children and Youth ("CYS") caseworker Miranda Stritzinger from a November 17, 2023 contempt hearing. Ms. Stritzinger testified:

> [T]he Agency received a referral in May 2023 regarding the parents and [Child] (Transcript 11/17/23, p. 8). She spoke to [Child] and the parents (**Id.** at 9-10). In speaking with [Child], she related a conversation, with no objection from [Mother], when it came to Father's girlfriend, [Child] stated "please don't tell my mom that I talked about my dad's girlfriend. I'm going to get in trouble. You know, I have to sit at the dinner table and think about what I'm doing. You know, she was calling dad's girlfriend foul names, throwing away toys." (**Id.** at 10). Ms. Stritzinger further testified that the "she" in the above testimony referred to Mother and when she mentioned that calling Father's girlfriend names and this was upsetting to the child, Mother said "she's going to continue to call her that and no one is going to tell her not to." (**Id.** at 10).

- 2 -

Ms. Stritzinger also testified that she thought it best that [Child] be in individual counseling and the parties be in family counseling. She testified, without objection, that Mother had terminated [Child]'s individual counseling. Although Mother's counsel objected to the testimony regarding the termination of counseling, it only related to the reason why Mother terminated [Child]'s individual counseling. There was no objection to that portion of the testimony that Mother terminated [Child]'s individual counseling. (**Id.** at 12-14).

Ms. Stritzinger testified also that she reviewed a video taken by Father on August 19, 2023 where Father appeared at [Child]'s soccer game and Mother pulled [Child] and made her leave the game. Again, this testimony was without objection. (**Id.** at 16-17).

One final issue that Ms. Stritzinger covered in her testimony was her review of text messages between Father and Mother to which there was an objection by counsel for Mother based upon hearsay. The Court overruled the objection because it was between the parties. These texts indicated that Mother destroyed school supplies that were purchased by Father. (**Id.** at 18-20, Plaintiff's Exhibit 16).

Ms. Stritzinger testified that her supervisor did not approve opening of a case, because the issues of counseling and parenting could be addressed in a private custody matter. (**Id.** at 38).

Ms. Stritzinger recommended that Mother undergo a mental health examination because of the events which had taken place, that is, removing [Child] from therapy, removing [Child]'s school supplies provided by Father, and removing [Child] from the soccer game. (**Id.** at 21). In addition, Ms. Stritzinger recommended individual counseling for [Child] and a parenting program for the parents. (**Id.** at 20).

Trial Court Opinion, 4/16/24, at 5-7 (some record citation formatting provided).

Father testified that he had partial physical custody of Child from Sunday evening until Tuesday morning before school. Father would get Child to and from school and help her with homework. When Child had Mondays off, Father would play with her, watch movies, and arrange playdates for her. **See** N.T., 2/5/24, at 24.

Mother contacted Father about registering Child for t-ball because Child had expressed an interest in the sport. Father agreed with the idea and, at the coach's request, Father volunteered to be an assistant coach. **See id.** at 26-27. Shortly thereafter, Mother refused to bring Child to practices or other t-ball events during her periods of custody, maintaining it would interfere with Child's dance class schedule. Father denied that it would not have been possible for Child to do both activities. Mother pulled Child out of t-ball before her first game, upsetting Child. **See id.** at 27-29.

Father recounted an incident when he attempted to contact Child for a 2-minute phone call about a school project, as he had promised her he would, and Mother refused to allow him to speak to Child. **See id.** at 31-34. However, Father testified he allowed Child to speak with Mother during his periods of custody. He recounted an incident when Mother called Child on a Sunday while Child was at Knoebels with Father. Mother told Child that she would be kicked out of dance because she missed class due to going to Knoebels. **See id.** at 37. Father maintained that Child actually only had missed dance on the Saturday before due to illness and the dance instructor did not threaten Child

would be unable to continue dance, but instead merely stated, "okay, I hope she feels better." *Id.* at 38.

Similarly, Child was enrolled in soccer. When Father appeared at a game, Mother told him he was not welcome there since he did not pay 50-percent of the registration fee, although he paid child support. *See id.* at 44. Mother walked onto the soccer field and pulled Child off the field and started walking toward the parking lot with hysterical Child. *See id.* at 46. Father immediately left so that Mother would allow Child to play. *See id.* at 46. Videotape evidence of the incident supported Father's description of events. *See id.* at 46.

In a similar incident, Mother and Child arrived at Child's dance studio one evening as Father was leaving after being there to pay a tuition bill. As Child ran to Father, Mother said, "what the f*ck are you doing here? You're f*cking with the kid's head." *Id.* at 52. She finally handed Child to Father so Child could give him a hug. *See id.* Since then, Father has to "hide" to be able to watch Child at her dance recitals.

Child attends a private school that requires uniforms. Mother refuses to send Child's uniforms with Child on Father's Mondays and Tuesdays, requiring Father to purchase a separate set of uniforms for when Child is leaving for school from his home. *See id.* at 62. Similarly, Mother would not provide school supplies for Child to take to school on days she was with Father and, when Father bought school supplies for Child, Mother told Father she was

going to destroy the supplies because Child brought them home to Mother's house. *See id.* at 94-95, 99, 100-01, 103-06.

Father testified that Child has a strong relationship with her paternal grandparents, who see her at least once during each of Father's custodial periods. *See id.* at 69. He testified that the "vast majority" of his extended family lives in the immediate vicinity of his residence and Child spends time with them when she is in Father's custody. *See id.* at 69-72.

Father recounted a story in which Mother told Child to throw away birthday gifts given to Child by Father's then-girlfriend. Mother called the girlfriend "trash" and told Child she should not have any contact with her. *See id.* at 73-74. On Easter, when Mother found out Child had not thrown away the gifts, Mother told Child she "ruined" Easter and sent Child to her room. *Id.* at 74.

Mother forbid Father from telling Child that Santa, the Easter Bunny, and the tooth fairy go to the homes of both Mother and Father because Child only really lived at Mother's house. Mother threatened that, if he told the Child they go to both houses, Mother would tell Child Father is a liar. *See id.* at 76-79.

Father testified that Mother did not like the relationship he had with Child's therapist, so Mother unilaterally pulled Child out of therapy over Father's objection. *See id.* at 82-83.

Mother admitted to the majority of Father's allegations against her. For example, she conceded she did not want Father to tell Child that Santa, etc. would go to both Father and Mother's homes, but claimed Father agreed to that. *See id.* at 421. Although she admitted the authenticity of the video depicting her removing Child from her soccer game, Mother denied the video's contents. *See id.* at 412-19. Mother testified she would not give Child her school uniforms for when she was attending school during Father's periods of custody because Father should have to supply them. *See id.* at 424-25. She maintained she bought school supplies for Child and Father failed to take them when he picked up Child, instead choosing to buy more himself. *See id.* at 426-28. However, because Mother threatened to throw away the school supplies purchased by Father, he had to coordinate with Child's teacher to leave them at the school. *See id.* at 428. She admitted she threw Child's school shoes onto the front lawn and contacted Father to pick them up, but she maintained it was because they did not fit Child correctly. *See id.* at 429. As for dance, Mother testified that Father should not be at Child's dance class and that she told Child dance would be terminated because Child elected to go to Knoebels with Father. *See id.* at 423, 433. Mother denied throwing away the gifts Father's girlfriend gave to Child or telling Child she ruined Easter. *See id.* at 430.

The court describes that:

> [C]ounsel for Father stated on the record that the caseworker did not recommend transfer of custody, and he stated that he did not

have a case to warrant such relief but was seeking a mental health evaluation, individual counseling for the child, and coparenting counseling. (*Id.* at 45-46). Counsel for Mother stated the child was in counseling and the parents were in counseling and he agreed those items could be ordered. (*Id.* at 48).

Importantly, it should be noted that Mother had ample opportunity to testify and present witnesses on all matters which were covered in the testimony of Ms. Stritzinger. In determining the best interests of the child, the Court considered all the evidence presented during the hearing on November 17, 2023 and the trial which consumed three days of testimony. More importantly, all the facts testified to by Ms. Stritzinger were supported by the credible testimony of Father.

Trial Court Opinion, 4/16/24, at 7 (some record citation formatting provided).

At the conclusion of trial, the trial court advised the parties that its "role is to weigh all 16 [custody] factors and to make a decision that is in the best interest of [Child]." *Id.* at 473; *see also* 23 Pa.C.S.A. § 5328. The court then reviewed the factors applicable to its findings, granted Father's petition for modification, and granted the parties shared legal and shared physical custody of Child. Mother timely appealed and filed a contemporaneous statement of errors containing 9 issues, and the court filed a Rule 1925(a) opinion. *See* Pa.R.A.P. 1925(a)(1), (2)(i).

Mother raises three issues for this Court's review:

Whether trial court abused its discretion and/or committed an error of law in allowing Veranda Stritzinger, a Luzerne County Children & Youth Services caseworker, to testify or otherwise afforded her testimony inappropriate weight where said testimony was solely based upon hearsay and the accusations of [Father].

Whether the trial court abused its discretion and/or committed an error of law in awarding [Father] share[d] physical custody of [Child] where the great weight of [the] evidence demonstrated it

was in the best interests of [Child] for the status quo to remain in place.

Whether the trial court abused its discretion and/or committed an error in applying the evidence produced at trial to the sixteen (16) factors enumerated [in] 23 Pa.C.[A.] § 5328 to determine that the best interests of [Child] would be served in awarding [Father] shared legal custody.

Appellant's Brief, at 6 (unnecessary capitalization and suggested answers omitted).

As a preliminary matter, we observe that Mother's brief fails to confirm with our briefing requirement that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a), (b). Mother's brief contains one argument section in which Mother claims the court erred in concluding the evidence established that granting Father shared physical custody is in Child's best interest. **See** Appellant's Brief, at 13. Her entire legal analysis consists of citation to boilerplate law about the best interests of the child and the 16 custody factors listed in 23 Pa.C.S.A. § 5328(a). **See id.** at 12-13. We could deem Mother's appeal waived on this basis. **See** Pa.R.A.P. 2101. Even if properly presented, Mother would be due no relief.[2]

---

[2] Mother abandons her first claim, challenging the admission of Veranda Stritzinger's testimony.

We review custody orders for a gross abuse of discretion, which we only will find if, "in reaching its decision, the trial court overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record." *Rogowski v. Kirven*, 291 A.3d 50, 60 (Pa. Super. 2023) (citation omitted).

> When conducting our review of a custody order:
>
> we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Id.* at 60-61 (citation omitted). As with any custody matter, the paramount concern is the best interests of the child involved. *See id.*

When ascertaining the best interests of a child in a custody matter, the court must conduct a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral, and spiritual well-being of that child. *See Taylor v. Smith*, 302 A.3d 203, 207 (Pa. Super. 2023). To that end, Section 5328(a) of the Pennsylvania Child Custody Act lists 16 factors a court must consider when determining the best interests of the child. *See* 23 Pa.C.S.A. § 5328(a). It is within the purview of that court "to

determine which factors are most salient and critical in each particular case."
*Id.* (citation and internal quotation mark omitted).

Here, the trial court addressed each of these 16 factors on the record, just as Section 5328(a) requires it to do. *See* N.T., 2/9/23, at 473-83; *see also* Trial Court Opinion, 4/16/24, at 8-9. In discussing each factor, the trial court determined whether that factor weighed in favor of either party and explained its reasoning for reaching its conclusion. *See id*. The court found that 8 of the factors favored Father, and that the remainder of the factors did not favor either parent.

Mother takes issue with the court's findings that the following factors favored Father:

> (1) Which party is more likely to ensure the safety of the child.

> (4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

> (8) The attempts of a party to turn the child against the other party[.]

> (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

> (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

> (13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child or self from abuse by

another party is not evidence of unwillingness or inability to cooperate with that party.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

*See* Appellant's Brief, at 14-26. Mother's challenge lacks merit.

In its Rule 1925(a) opinion, the court summarized:

The court found that factors 2, 3, 5, 6, 7, 11, 12 and 14 were either neutral or not applicable. The court found that the remaining factors weighed against Mother with factor 1 weighing heavily against Mother. The evidence established how Mother's actions would cause severe alienation of [Child] from Father.

The court found credible the testimony of Father (supported by video evidence) that Mother pulled [Child] from a soccer game merely because Father appeared at the game. Mother threw away school supplies which Father purchased for [C]hild for the first day of school because Father bought them. Mother demanded [Child] throw away presents given to [Child] by Father's girlfriend and when Mother discovered that [C]hild did not throw them away, she told child she ruined Easter. When Mother was told that [Child] was upset because Mother called Father's girlfriend foul names, Mother responded she would continue to do so, because no one can tell her what to do. Also, Mother told Father he may appear at [Child's] dance competition, but she could stop [Child] from speaking to him. These incidents are only some examples of how Mother's actions would cause alienation of [C]hild toward Father and would take a tremendous adverse toll on the emotional well-being of [Child].

The conduct of Mother has not provided a stable environment for [Child] in her family and community life. The court is hopeful that awarding more custodial time to Father will provide a more stable environment for [Child]. Although [Child] may have been thriving physically while in the primary custody of Mother, certainly her emotional welfare is in significant danger if the custodial arrangement does not change.

Trial Court Opinion, 4/16/24, at 9 (unnecessary capitalization omitted).

- 12 -

Mother claims that the trial court's analysis of the factors was insufficient and not supported by the record, resulting in the court's "unreasonable" and "capricious" abuse of discretion. Our review of Mothers argument confirms that she is challenging the weight of the evidence, arguing that this Court should weigh it in the manner suggested by Mother. Of course, issues of credibility and weight of the evidence are exclusively for the trial court as the fact-finder in custody matters. **See A.L.B. v. M.D.L.**, 239 A.3d 142, 149 (Pa. Super. 2020); **see also Rogowski**, 291 A.3d at 60-61. Moreover, the record reflects that the trial court, both orally on the record at trial, and in its Rule 1925(a) opinion, analyzed all relevant 16 custody factors.

Although "[a] trial court must delineate the reasons for its decision when making an award of custody either on the record or in a written opinion[,] [**s**]ee 23 Pa.C.S.[A.] § 5323(a)and(d)[,] there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **Taylor**, 302 A.3d at 208 (case citations and internal quotation marks omitted).

Our independent review of the record confirms the court's consideration of the pertinent custody factors, and, while Mother clearly disagrees with the court's conclusions, we discern no manifest abuse of discretion in the court's weighing of the evidence or in its credibility findings. **See** N.T., 2/9/24, at 473-83. As previously described, the record is replete with credible testimony

of conflict between the parties. There are numerous findings which support the trial court's decision. These include: the court found Father credibly testified he was attempting to remove himself from conflict-ridden situations and going to counseling, while Mother takes no responsibility for the situation. *See id.* at 482. Furthermore, although Mother denied that she threw away the birthday gifts given to Child by Father's girlfriend, the court found the testimony that Mother did in fact throw away the gifts to be credible and harmful to the Child's emotional needs. *See id.* at 480. Finally, although Mother takes issue with the trial court ordering her to undergo a mental health assessment and to follow through with any recommendations, it is clear that the court ordered this in Child's best interest pursuant to factor 15 (the mental and physical condition of a party). *See id.* at 482-83.

Based on the foregoing, we discern no manifest abuse of discretion by the trial court in granting Father's petition for modification and awarding the parties shared legal and physical custody of Child. Mother is due no relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/25/2024