J-S28003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| BARBARA BARNES N/K/A OSBORN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHAD BARNES | : | No. 558 MDA 2025 |

Appeal from the Order Entered April 17, 2025
In the Court of Common Pleas of Lycoming County Civil Division at
No(s): FC-2023-20851-CU

BEFORE: BOWES, J., OLSON, J., and KING, J.
MEMORANDUM BY BOWES, J.: **FILED: OCTOBER 20, 2025**

Barbara Barnes n/k/a Osborn ("Mother") appeals *pro se* from the final custody order that awarded Chad Barnes ("Father") partial physical custody of the parties' son, S.B., born in January 2014, and daughter, G.B., born in April 2020 (collectively, "the Children"). We affirm.

We glean the relevant factual and procedural history of this matter from the certified record. Mother and Father were married for approximately nine years before separating in February 2022. They successfully co-parented the Children without incident until July 2023. At that time, their relationship significantly deteriorated after Father began cohabiting with his paramour, Adrianne Knittle, and Mother entered into a romantic relationship with Ryan Snyder. On September 8, 2023, Mother initiated these proceedings by filing a custody complaint through counsel. Father elected to represent himself during the initial phases of these proceedings.

The trial court appointed Jeffrey Yates, Esquire, to serve as the Children's guardian *ad litem* ("GAL"). Since it is relevant to our disposition, we note that the appointment order provided that the GAL be compensated at a rate of $80 per hour, at Father's sole expense. *See* Order, 12/4/23, at 3. On the same day, the court entered a separate, interim order awarding Parents shared legal custody and providing for equal periods of physical custody on a rotating weekly basis.

From the outset, the litigation in this matter proved contentious, with the parties each filing numerous petitions for special relief, contempt, and protection from abuse ("PFA") that are largely unimportant to the instant controversy. One exception is that the record reflects Father engaging in a protracted campaign of raising false allegations that Mr. Snyder sexually assaulted G.B. Specifically, he submitted several unfounded ChildLine complaints, as well as private criminal complaints with the Pennsylvania State Police ("PSP"), that the district attorney's office declined to prosecute. *See* Father's Exhibits 32, 35; Order, 7/16/24. Father also directed S.B. to lie to PSP troopers during their investigation of these accusations.

On February 16, 2024, Father raised these allegations in a petition for special relief that requested "full custody" of the Children until the investigations were completed. *See* Petition for Special Relief, 2/16/24, at ¶¶ 5-6. However, the petition was dismissed after Father failed to appear for a hearing scheduled in March. *See* Order, 3/19/24, at 1-2. Around this same

time, Parents, their respective paramours, and the Children underwent court-ordered psychological evaluations administered by Michael W. Gillum, a licensed clinical psychologist, who subsequently prepared a report summarizing his findings.  *See* Mother's Exhibit 1.

On May 23, 2024, the trial court suspended Father's physical custody award until:  (1) the court received a copy of the aforementioned psychological evaluation; and (2) a conference concerning the resumption of Father's physical custody occurred.  *See* Order, 7/16/24, at 4 (unpaginated);[1] *see also* Order, 6/26/24, at 1 (unpaginated).  These conditions were satisfied on or about October 8, 2024, when the court filed an order awarding Father supervised physical custody for two hours twice per week.  Also, in October 2024, Father obtained legal counsel with respect to these proceedings.

The court held a custody trial over the course of four days:  October 31, November 7, November 21, and December 3, 2024.  At the conclusion of the proceedings, the court made various findings on the record with respect to the custody factors set forth at 23 Pa.C.S. § 5328(a).  Thereafter, on December 9, 2024, the court filed an order that, *inter alia*, determined Parents would continue to share legal custody of the Children.  The order also provided that

---

[1]  This order was erroneously docketed at a different case when it was filed. The trial court subsequently amended the order to reflect a corrected docket number, which was then filed on July 16, 2024.

Parents would resume shared physical custody of the Children "on a week on/week off basis" beginning immediately. ***See*** Order, 12/9/24, at ¶ 3.

Father filed a petition for special relief requesting that Parents equally split the GAL's representation fees. The court held a separate hearing on this matter and, ultimately, granted Father's request in an order filed on February 4, 2025.[2] Particularly, the court directed that Parents equally share one-half of the GAL's outstanding invoices, totaling $1,278.41 each. ***See*** Order, 2/4/25, at 1-3 (unpaginated). The remaining balance was to be paid by Lycoming County.

Mother subsequently filed an entry of appearance, indicating that she wished to begin representing herself *pro se* for the first time during these proceedings. On the same day, she submitted a 196-paragraph-long motion for reconsideration that challenged the court's restoration of Father's physical custody rights on a multitude of various grounds. Of specific relevance, Mother alleged that: (1) the GAL "demonstrated gross negligence in his duty to advocate for the best interests of the [C]hildren;" and (2) the court had not sufficiently considered Father's above-described behavior as a form of abuse. ***See*** Motion for Reconsideration, 12/12/24, at ¶¶ 9, 99. Mother also made

_____

[2] Nine days later, Mother filed a motion for reconsideration concerning the order, which the court did not address. She then filed duplicative notices of appeal concerning the GAL reassessment order at Docket Numbers 293 MDA 2025 and 490 MDA 2025. This Court quashed both of those appeals as interlocutory.

references to a number of witnesses whom she intended to call to refute the trial court's relevant findings.

The trial court filed an order that granted Mother's request for reconsideration and directed Father to file a response.[3] *See* Order, 12/20/24. He complied. On December 31, 2024, the trial court issued written findings pursuant to § 5328(a), which appended a portion of the transcript of its on-the-record statement at the conclusion of the December 3 hearing.

On January 7, 2025, the trial court directed the GAL to complete a final report concerning his recommendations regarding custody of the Children within thirty days. However, the GAL unexpectedly passed away prior to the completion of his final report. Given the absence of the report, the trial court held that the GAL's "testimony during the trial shall be treated as his final report[.]" Order, 2/20/25, at 2 (unpaginated). Mother did not object to this procedure.

In March 2025, the trial court held a hearing on the arguments set forth in Mother's reconsideration motion. Mother presented no witnesses or evidence, instead providing only oral argument revisiting the extensive evidence adduced at the original four-day trial. *See* N.T., 3/27/25, at 3-22.

---

[3] On the same day that the court granted reconsideration, Mother appealed from the custody order, which resulted in the creation of an appeal at 1864 MDA 2024. This Court quashed the appeal pursuant to Pa.R.A.P. 1701(b)(3)(ii) (stating that a timely order granting reconsideration under this paragraph shall render inoperative any such notice of appeal "theretofore or thereafter filed or docketed with respect to the prior order").

On April 17, 2025, the court entered the appealed-from order that reaffirmed its prior custody order.

Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The court authored a Rule 1925(a)(2)(ii) statement that, again, adopted its earlier on-the-record findings.

Mother raises the following issues for our consideration:

1.     Whether the court improperly weighed the custody factors in reaching its decision.

2.     Whether the [GAL] failed in his role to protect the best interests of the Children by failing to fully and faithfully investigate all relevant witnesses and evidence[,] therefore precluding the court from ordering [Mother] to pay his fees.

Mother's brief at 8 (cleaned up).

We begin with the legal principles pertinent to custody challenges:

Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of

law, or are unreasonable in light of the sustainable findings of the trial court.

***Rogowski v. Kirven***, 291 A.3d 50, 60-61 (Pa.Super. 2023) (cleaned up).

In all custody-related matters, the Pennsylvania courts' "paramount concern is the best interest of the child involved." ***Id***. at 61 (cleaned up). To that end, our law provides that a court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S. § 5338(a). Additionally, § 5328(a) sets forth a number of factors that a court must consider prior to modifying an existing custody order. ***See E.B. v. D.B.***, 209 A.3d 451, 460 (Pa.Super. 2019). While a court's general consideration of these factors is mandatory, "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." ***Id***. (cleaned up).

Mother's first claim concerns the trial court's weighing of the factor at § 5328(a)(2), which pertains to "the present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse." 23 Pa.C.S. § 5328(a)(2). Specifically, Mother avers that "[t]he record at hand clearly reflects that [Father] abused the [C]hildren." Mother's brief at 61. In awarding Father shared physical custody of the Children, Mother maintains the trial court "did not consider the serious and recent abuse of the [C]hildren[.]" ***Id***. at 65. We disagree.

Assuming, *arguendo*, that Father's behavior described above constituted emotional "abuse" for the purposes of § 5328(a)(2), it is clear that the trial court thoroughly considered these events in fashioning its custody award. At the conclusion of the December 3, 2024 hearing, the court noted that it was fully aware of the "emotional trauma" that Father had caused the Children through his unfounded claims that Mr. Snyder sexually assaulted G.B. **See** N.T., 12/3/24, at 2-5, 16, 18-21 (acknowledging the involvement of child protection authorities, the findings in Dr. Gillum's report concerning Father's actions, Father's submission of criminal complaints, and the other relevant testimony adduced at the custody trial). Despite these concerns, the court determined that it was not in the Children's best interests to be deprived of regular, unsupervised contact with Father. **Id**. at 21.

To the extent Mother claims that the trial court failed to consider the evidence of Father's abusive actions, this contention is belied by the certified record and the trial court's own findings. Mother's further arguments merely ask us to override the court's credibility determinations and re-weigh the evidence of record in her favor. Since the record supports the court's findings, we must decline. **See Rogowski**, 291 A.3d at 60-61. Accordingly, no relief is due with respect to Mother's first claim for relief.

Turning to Mother's remaining issue, she avers that the GAL failed to comply with his statutory obligations pursuant to § 5334. **See** Mother's brief at 67-70. Mother therefore maintains that the parties were "denied a fair trial"

and that the GAL's alleged failure in discharging his duties should preclude her from having to pay the $1,278.41 in fees allocated by the trial court. *Id*. at 69-70.

This Court has explained: "When reviewing the propriety of the amount the trial court awards for statutorily mandated attorneys' fees, an appellate court uses an abuse of discretion standard." *L.M.P. v. E.C.*, 149 A.3d 877, 879 (Pa.Super. 2016) (cleaned up). In this context, "[w]e will not find an abuse of discretion in the award of counsel fees merely because we might have reached a different conclusion." *Id*. (citation omitted). "Rather, we require a showing of manifest unreasonableness, partiality, prejudice, bias, ill-will, or such lack of support in the law or record for the award to be clearly erroneous." *Id*. (citation omitted).

Tellingly, Mother has cited virtually no legal authority in support of her claim that the GAL shirked his duties, beyond a passing citation to § 5334, which provides, in its entirety, as follows:

**§5334.  Guardian ad litem for child**

**(a) Appointment.--**The court may on its own motion or the motion of a party appoint a guardian ad litem to represent the child in the action.  The court may assess the cost upon the parties or any of them or as otherwise provided by law.  The guardian ad litem must be an attorney at law.

**(b) Powers and duties.--**The guardian ad litem shall be charged with representation of the legal interests and the best interests of the child during the proceedings and shall do all of the following:

(1) If appropriate to the child's age and maturity, meet with the child as soon as possible following the appointment and on a regular basis thereafter.

(2) On a timely basis, be given access to relevant court records, reports of examination of the parents or other custodian of the child and medical, psychological and school records.

(3) Participate in all proceedings.

(4) Conduct such further investigation necessary to ascertain relevant facts for presentation to the court.

(5) Interview potential witnesses, including the child's parents and caretakers, if any. The guardian ad litem may examine and cross-examine witnesses and present witnesses and evidence necessary to protect the best interests of the child.

(6) Make specific recommendations in a written report to the court relating to the best interests of the child, including any services necessary to address the child's needs and safety. The court shall make the written report part of the record so that it may be reviewed by the parties. The parties may file with the court written comments regarding the contents of the report. The comments filed by the parties shall also become part of the record.

(7) Explain the proceedings to the child to the extent appropriate given the child's age, mental condition and emotional condition.

(8) Advise the court of the child's wishes to the extent that they can be ascertained and present to the court whatever evidence exists to support the child's wishes. When appropriate because of the age or mental and emotional condition of the child, determine to the fullest extent possible the wishes of the child and communicate this information to the court. A difference between the child's wishes under this paragraph and the recommendations under paragraph (6) shall not be considered a conflict of interest for the guardian ad litem.

**(c) Abuse.--**If substantial allegations of abuse are made, the court may appoint a guardian ad litem for the child if:

(1) counsel for the child is not appointed under section 5335 (relating to counsel for child); and

(2) the court is satisfied that the relevant information will be presented to the court only with such appointment.

**(d) Evidence subject to examination.--**A guardian ad litem may not testify except as authorized by Rule 3.7 of the Rules of Professional Conduct, but may make legal argument based on relevant evidence that shall be subject to examination by the parties.

**(e) Costs.--**The court may order a party to pay all or part of the costs of appointing a guardian ad litem under this section.

**(f) Education and training.--**A court appointing a guardian ad litem under this section shall make reasonable efforts to appoint a guardian ad litem who received evidence-based education and training relating to child abuse, including child sexual abuse, domestic abuse education and the effect of child sexual abuse and domestic abuse on children.

23 Pa.C.S. § 5334. Hence, § 5334 (a) and (e) generally empower the trial court to assess fees at the expense of the parties to a custody proceeding on behalf of the GAL. *See L.M.P.*, 149 A.3d at 880.

Mother alleges that the GAL failed to discharge his duties by purportedly failing to: (1) expound upon the Children's preferences on the first day of trial; (2) contact "any important party" in the course of representation; and (3) complete a final report. *See* Mother's brief at 68-70. Upon review, we readily conclude that the certified record refutes Mother's allegations of non-performance.

Mother is correct in noting that the GAL did not provide his recommendation regarding the Children's preferences on the first day of the custody trial. *See* N.T., 10/31/24, at 104-05. Her arguments elide, however, the salient fact that her attorney agreed to allow the GAL to offer his recommendation at a later date. *Id*. The GAL did so during the final day of trial, opining that Parents resume shared physical custody. *See* N.T., 12/3/24, at 4-17. Hence, we discern no failure in performance in this regard.

We also find no merit in Mother's contention that the GAL failed to conduct an appropriate investigation by contacting and interviewing relevant individuals. To the contrary, the GAL's uncontested testimony reveals that he spoke with Parents, their respective paramours, and the Children on numerous occasions. *Id*. at 4-5. He also communicated with additional individuals associated with the case, including one of S.B.'s teachers, Dr. Gillum, and another physician who conducted a separate psychological assessment. *Id*. at 5, 9.

Finally, Mother's assertion that the GAL failed to complete a final report, as required by § 5334(b)(6), only tells half the tale since the GAL unexpectedly died before his time in which to complete a report had elapsed. Indeed, the trial court initially excused the GAL from preparing a written report at all. *See* N.T., 12/3/24, at 15. After granting Mother's motion for reconsideration, though, the court ordered the GAL to prepare the report by February 6, 2025. *See* Order, 1/7/25. Unfortunately, the GAL passed away approximately two

weeks before the due date. *See* Order, 1/24/25. In response to these exigent events, the trial court held that a transcript of his testimony would serve in lieu of a written report. *See* N.T., 2/7/25, at 3-4. Mother did not tender a contemporaneous objection concerning this holding, and therefore it is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Based upon the foregoing, we find no basis upon which to conclude that the GAL derogated his statutory obligations under § 5334(b). To the contrary, the record reflects that he conducted an appropriate investigation and set forth his recommendations regarding custody of the Children on the record. The only arguable deficiency in the GAL's performance was that his untimely demise precluded him from authoring a written report. We do not believe, however, that the unknowable whims of mortality constitute a "failure" on counsel's part, particularly when his time in which to complete the complained-of report had not yet elapsed when he died. Furthermore, the parties nonetheless benefited from the GAL's reasoning concerning custody, as conveyed by his testimony. *See* N.T., 12/3/24, at 4-17.

Accordingly, we find no merit in Mother's final claim that the GAL's performance was so deficient that he was not entitled to collect counsel's fees in connection with his representation of the Children. We therefore affirm the order awarding Father partial physical custody of the Children.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/20/2025